IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:04-CR-169 |
| | ) | |
| LEONARDO REYES, ONIDES REYES, | ) | |
| and ALBERTO SUAREZ | ) | |

## MEMORANDUM AND ORDER

Pending before the court in this criminal care are the objections to the report and recommendation filed by defendant Leonardo Reyes [docs. 39 and 40] and the government [doc. 41]. A transcript of the suppression hearing has been prepared and reviewed by the court [doc. 42]. For the reasons discussed below, defendant Reyes's objection will be overruled, and the government's objection will be granted.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28

U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

### *Factual Background*

On April 19, 2003, the Catoosa County Sheriff's Office received a dispatch reporting that a person had seen a parked semi-trailer being broken into at the Georgia Welcome Center. There was no tractor attached to the Landstar trailer. Deputy Freddie Roden responded to the call, and Deputy Hooten arrived a short time later.

Deputy Roden testified at the suppression hearing that when he arrived at the Welcome Center, he talked with Louise Richards, an over-the-road truck driver. Ms. Richards told Deputy Roden that she saw three or four Hispanic males walk to the rear of the Landstar trailer, and one of them had a set of bolt cutters. While he was talking with Ms. Richards, Deputy Roden saw a tractor backing up to a trailer parked next to the Landstar trailer with two men walking alongside. Ms. Richards told Deputy Roden that the men, including the driver of the tractor, were the ones she had seen around the Landstar trailer. Deputy Roden asked the men to come over to him, along with a fourth Hispanic man walking in the parking lot who had been identified by Ms. Richards as being with the others.[1] He asked the men for identification, patted them down, and instructed them to sit on the concrete near the Landstar trailer "until we could

---

[1] This person was eventually released without being charged.

figure out what we had." The deputies held the men's identification to make a warrant check, but did not take the keys to the tractor. The men were not given their *Miranda* rights at this time.

Deputy Roden walked to the back of the Landstar trailer and saw that the seal on the back of the truck had been cut off. He also saw a product tag for bolt cutters lying on the ground at the rear of the trailer. Deputy Roden went back to the men and asked who had been driving the tractor. Defendant Leonardo Reyes ("Reyes") admitted it was him, and Deputy Roden took Reyes to the rear of the Landstar trailer and showed him where the seal had been cut off. He asked Reyes if he had some bolt cutters. Reyes said he did and, without Deputy Roden asking, went the tractor to get them. Deputy Roden walked to the tractor with Reyes. Reyes's bolt cutters were the same brand as the product tag Deputy Roden found on the ground. Reyes said that he used the bolt cutters to cut off the seals on his trailers. At some point Ms. Richards found the broken seal in the grass behind the trailer.

Deputy Roden tried to find out why the men were at the Welcome Center, where they had come from, and where they were going. Deputy Roden testified that there "began to be somewhat of a language barrier" and communication became difficult. Deputy Hooten called a detective who instructed them to bring the men into the Sheriff's office for further interviews. The men were detained at the Welcome Center for approximately thirty minutes.

3

The deputies did not draw or use any weapons during the detention. Other than transporting two of the men to the Sheriff's office, Deputy Roden had no further involvement with this case.

Two days later, Detective Mike Tinker submitted an affidavit for a search warrant. He sought to search Reyes's tractor, a 1994 Freightliner truck tractor owned by Power Acceptance Corporation, which had been impounded. The affidavit stated that the items to be located were:

> Tools used in the commission of a crime (burglary, auto theft). Documentation or records pertaining to the theft, transport, sale, purchase or facilitating the theft, transport, sale or purchase of stolen vehicles or commercial cargo or person(s) involved. Any U.S. currency derived from or used for the purpose of theft, transport, sale or purchase of stolen vehicles or commercial cargo.

Detective Tinker then stated the facts which he believed established probable cause for the search:

> On April 19, 2003 the Catoosa County Sheriff's Office responded to 2732 Interstate 75, south bound Welcome Center, Ringgold, Catoosa County, Georgia to investigate a report of suspicious activity around a cargo trailer with no truck attached parked at the rear of the welcome center. Louise Richards, a driver parked close by observed another tractor trailer arrive, unhook from a trailer and pull a short distance away. Upon returning to the parked trailers three Hispanic males were observed around the 2001 Wabash National Trailer bearing Illinois registration T280266 and a Landstar logo on the trailer. Ms. Richards observed one Hispanic male approach the rear of the trailer she had observed was locked, with a pair of bolt cutters. A time later the Hispanic male

4

returned to the aforementioned 1994 Freightliner tractor
and placed the bolt cutters inside.

Upon investigation it was found that the 2001 Wabash
National trailer bearing Illinois registration T280266 had
been reported stolen from Knox County Tennessee.
The trailer was recovered and impounded.

Further investigation indicated a number of stolen loads
of commercial products had been stolen with the trailers
recovered missing their cargo in the Macon, Georgia
area. The investigation revealed Minlo Worldwide
contracted with Hewlett Packard to transport their
products utilizing Landstar as the commercial carrier.

The search warrant was approved by a Catoosa County magistrate judge.

## *Legal Discussion*

In his report and recommendation, the magistrate judge in this case found that the defendants were not in custody at the time the limited questions were asked at the Welcome Center and recommended that the defendants' motion to suppress any evidence obtained at the Welcome Center be denied. However, the magistrate judge found that Detective Tinker's affidavit was insufficient to establish probable cause to search the 1994 Freightliner tractor and recommended that any evidence seized as a result of the search warrant be suppressed.

A. <u>Suppression of the defendant's statements made at the rest area</u>

Since defendant Leonardo Reyes was the only person who made any statements at the Welcome Center, he was the only defendant to object to

5

the magistrate judge's recommendation that his motion to suppress be denied.[2] He argues that the magistrate judge erred in concluding that Reyes was not in custody when he was asked who the driver of the tractor was and if he had any bolt cutters. In support of his argument that he was in custody and entitled to his *Miranda* warnings, he says that the defendants were made to sit on the concrete next to the Landstar trailer; their identification documents were taken, some of which may have been driver's licenses; and they were restrained from leaving for about thirty minutes. Reyes then argues that Deputy Roden is presumably a "reasonable man" and would have understood that the defendants were in custody.

It is important to note that Reyes does not object to the validity of the investigatory stop that led to the questioning. Rather, his complaint is that it quickly became a custodial situation entitling him to his *Miranda* warnings prior to questioning. Further, none of the defendants claim that there was any evidence to be suppressed as a result of being taken to the Sheriff's office. Thus, the only issue for the court is whether the defendants were in custody when information about the driver of the truck and the bolt cutters was elicited.

---

[2] In fact, it appears that the other defendants, Onides Reyes and Alberto Suarez, would not have standing to object to any part of the investigation of this case except their own detentions. Only Leonardo Reyes, as the presumably authorized driver of the tractor, would have standing to object to the search. *See, e.g.*, *United States v. Abreu*, 935 F.2d 1130, 1133 (10th Cir. 1991); *United States v. Garcia*, 897 F.2d 1413, 1418-19 (7th Cir. 1990).

6

The court agrees with the magistrate judge that the stop and brief detention of the defendants was an investigatory detention pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the defendants were not in custody at the time Deputy Roden asked them who was driving the tractor and if Reyes had bolt cutters. Under *Terry*, an officer may stop a person upon reasonable suspicion that a crime is being committed and ask a moderate number of questions to determine the person's identity and to investigate the situation. *Id.* at 22, 88 S.Ct. at 1880. "The very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights." *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003). The court must look to the totality of the circumstances to determine whether a reasonable person would have believed himself to be in custody. *Id.* at 528-29.

In this case, the court concludes that Reyes and the other defendants were not subject to custodial interrogation. Although they were not free to leave, "the restraint exercised never reached the level associated with 'formal arrest or a coercive context tantamount to custody.'" *Id.* at 529 (quoting *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998)). The questioning was minimal and not coercive or hostile. The questioning occurred outside in the daytime, and none of the deputies drew or displayed their firearms. The defendants were not detained at the rest area for an excessive length of time, and they were not physically restrained beyond being asked to sit on the concrete

7

next to the Landstar trailer.  In addition, there is no evidence that the defendants were hesitant or refused to answer Deputy Roden's questions.  Absent a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest," the detention was investigatory – not custodial.  *Id.* at 531 (quoting *United States v. Knox*, 839 F.2d 285, 291 (6th Cir. 1988)).

Therefore, the court concurs with the magistrate judge's recommendation that the evidence obtained from Reyes at the Welcome Center need not be suppressed.

<u>B.  Suppression of evidence seized pursuant to the search warrant</u>

As pointed out above, the magistrate judge recommended that the evidence seized from the tractor pursuant to the search warrant be suppressed because there was insufficient probable cause for the warrant to be issued, and the good faith exception does not apply.  In its objections to these recommendations, the government argues that if the affidavit and search warrant are given the deference they should be given, then there is sufficient probable cause to believe that the trailer had been stolen; that there was at least an attempted burglary of the trailer; and that the tractor might contain tools used in the commission of the crime.

The United States Supreme Court requires that courts reviewing the sufficiency of affidavits should give great deference to an issuing magistrate's determination that there was probable cause to support the issuance of a search

8

warrant. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). In *Gates*, the Supreme Court rejected rigid tests for determining whether there was probable cause to support a search warrant in favor of a "totality of the circumstances" test. *Id.* at 230-31, 103 S.Ct. at 2328; *see also United States v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000) (en banc).

> The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing] that probable cause existed."

*Gates*, at 238, 103 S.Ct. at 2332 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). When considering the source of the information about criminal activity, the Supreme Court pointed out by way of example that "if an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Id.*, at 233-34, 103 S.Ct. at 2330.

An investigation established that the Landstar trailer had been reported stolen from Knoxville, Tennessee. Louise Richards, a citizen eyewitness familiar with tractor-trailer rigs (she was an over-the-road driver

9

herself) noticed the parked Landstar trailer at the Welcome Center, which she checked and found to be locked. She then saw a tractor-trailer rig arrive in the area where the Landstar trailer was parked. The trailer was unhooked and the tractor was driven a short distance away and parked. She then saw three Hispanic men around the Landstar trailer, and one of the men took a pair of bolt cutters to the rear of the trailer. Ms. Richards specifically recalled seeing the Hispanic man return to the tractor and place the bolt cutters in the cab. This observation, the government argues, provides the nexus between the suspected unlawful activity – the stolen trailer – and the place to be searched – the tractor.

The government also suggests that there were some reasonable inferences to be drawn from the information in the affidavit. *Cf. United States v. Miggins*, 302 F.3d 384, 394 (6th Cir. 2002) (citing with approval *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999) for the proposition that a issuing magistrate may draw reasonable inferences about where evidence is likely to be kept). For example, the government contends that it reasonably could be inferred: (1) that someone approaching a parked and locked trailer, not clearly belonging to them, with bolt cutters was probably involved in unlawful activity; (2) that by unhooking their own trailer, the men intended to hook up to the parked Landstar trailer; and (3) that the rest area was less than 150 miles away and in a direct line from Knoxville, where the trailer had been reported stolen, and Macon, Georgia, where stolen and empty trailers had been recovered.

10

The magistrate judge was concerned that there was insufficient information in the affidavit to support a finding of probable cause that the criminal offenses described in the affidavit and the search warrant occurred. The issuing magistrate only knew that the trailer had been reported stolen, but he did not and could not know if the tractor would reveal evidence that the Hispanic men had stolen and parked the trailer or if they were to receive the stolen goods from the thief. To this court's mind it makes no difference. *See, e.g.*, *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991) (holding "that knowledge of the precise crime committed is not necessary to a finding of probable cause"). What the issuing magistrate did know was that the trailer had been reported stolen, and that the Hispanic men who were connected to the tractor to be searched had been seen near the stolen trailer and one of them had bolt cutters.

Giving the required deference to the issuing magistrate, this court finds that there was sufficient probable cause in the affidavit to believe that the evidence of a crime would be found in the tractor named in the search warrant. However, assuming this probable cause determination is incorrect, the court finds that the *Leon* "good-faith" exception applies in this case. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the Supreme Court held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. at 3411.

11

There are, however, four exceptions to the "good faith" rule: (1) if the issuing magistrate was misled by information in the affidavit that the affiant knew or should have known was false; (2) if the issuing magistrate wholly abandoned his judicial role; (3) if the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) if the warrant failed to particularize the place to be searched or the things to be seized. *See United States v. Van Shutters*, 163 F.3d 331, 338 (6th Cir. 1998).

The magistrate judge found that the issuing magistrate was misled by information omitted from the affidavit concerning the bolt cutters and that the affidavit was so lacking in any indicia of probable cause that the executing officers were not entitled to the "good faith" exception. This court disagrees with both these findings. First, concerning the bolt cutters, the only mention of the bolt cutters in the affidavit was that Ms. Richards saw one of the men carry them to the back of the sealed trailer, and then return them to the tractor. At the suppression hearing, however, Deputy Roden described how Reyes retrieved the bolt cutters from the tractor and gave them to him. Thus, the bolt cutters could not have been found in the tractor. This court does not believe this to be a fatal omission. Neither the affidavit nor the search warrant specifically describe the bolt cutters as items to be located in the tractor even though that would have

12

been a reasonable inference.[3] The court finds that the omission of the information about the bolt cutters did not undermine the showing of probable cause. *See United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir.) (en banc), *cert. denied*, 125 S.Ct. 261 (2004) (finding that to be constitutionally problematic, the omitted material must have undermined the showing of probable cause).

Second, the magistrate judge found that the affidavit was so lacking in any indicia of probable cause that the "good faith" exception did not apply, primarily because there was an insufficient nexus between the criminal activity and the place to be searched. This court disagrees and finds that "reasonable officers could have believed that the affidavit as submitted, even without the additional relevant information known to the officers, was sufficient to support the issuance of the warrant." *Id.* at 596. Even a minimally sufficient nexus between the criminal activity and the place to be searched may support an officer's good-faith belief in the warrant's validity. *Id.* In the present case, the affidavit was not totally lacking a nexus between the stolen trailer and the tractor. In fact, Ms. Richards's information specifically tied the stolen trailer, the activities of the three Hispanic men, and the tractor together.

Thus, even if the court's determination that there was sufficient probable cause to support the issuance of the search warrant is incorrect, the

---

[3] The court notes that Detective Tinker specifically omitted any information in his affidavit related to Deputy Roden's investigation at the rest area, probably to protect his search warrant in the event that the investigation was later ruled improper. However, Deputy Roden discovered information on his own that would have bolstered the affidavit; *e.g.*, that the seal had been cut off the trailer.

13

court finds that the *Leon* good-faith exception applies. Therefore, the court will grant the government's objections to the report and recommendation on the search warrant issue.

### *Conclusion*

For the reasons stated above, the court **CONCURS** with the magistrate judge's recommendation that the evidence seized at the rest area need not be suppressed, and defendant Leonardo Reyes's objections are **OVERRULED**, but the court **DISAGREES** with the magistrate judge's recommendation that the evidence seized pursuant to the search warrant be suppressed, and the government's objections are **GRANTED**. It is hereby **ORDERED** that the defendants' motion to suppress evidence [doc. 15] is **DENIED**.

ENTER:

        *s/ Leon Jordan*
United States District Judge